# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:15-cv-00199-MR

| | |
|---|---|
| SUSAN ANNETTE COLE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment. [Doc. 13].

## I.  BACKGROUND

Plaintiff, at the time of her application, was a 45 year old woman suffering from numerous mental and physical maladies. [Doc. 8-4 at 1 (T. at 65)]. She filed this action and asserts herein that the Administrative Law Judge ("ALJ") erred when addressing her mental impairments. [Doc. 10].

On December 19, 2012, the Plaintiff filed an application for supplemental security income alleging disability beginning February 15,

2012.[1] [Doc 8-6 at 2; 5 (T. at 163; 166)]. Plaintiff's claim was denied initially and on reconsideration by the state agency. [Doc. 8-5 at 5; 17 (T. at 101; 113)]. Upon the Plaintiff's request, a hearing was held before an ALJ in Asheville, North Carolina, on June 11, 2014. [Doc. 8-3 at 50 to 65 (T. at 49 to 64)]. Present for the hearing were Plaintiff, Plaintiff's husband, Plaintiff's non-attorney representative, and Dr. Robert Spangler, Vocational Expert. [Id. at 50 (T. at 49)]. On August 28, 2014, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 30 to 44 (T. at 29 to 43)]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 2 to 4 (T. at 1 to 3)]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security

---

[1] At the hearing before the ALJ, the Plaintiff amended her disability onset date to December 19, 2012, the date of her initial application. [Doc. 8-3 at 52-53 (T. at 51-52)].

Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). "In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2012). The claimant "bears the burden of proving that he is disabled within the meaning of the Social Security Act." English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993). In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

At the first step, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. 20 C.F.R. §§ 404.1520; 416.920. If not, the case progresses to the second step where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies or a combination thereof which significantly limit the claimant's ability to perform

4

work activities, then no severe impairment is established and the claimant is not disabled. Id. Third, if a severe impairment is shown and meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. Fourth, if the severe impairment does not meet any of the Listings, then the ALJ determines the claimant's residual functional capacity ("RFC") and reviews the physical and mental demands of work done in the past. If the claimant can still perform his/her prior work despite the severe impairment, then a finding of not disabled is mandated. Id. If the claimant has a severe impairment but cannot perform past relevant work, then the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work that exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006) (noting Commissioner bears evidentiary burden at step five). The Commissioner may meet this burden by relying on the Medical–Vocational Guidelines ("Grids") found at 20 C.F.R. 404, Appendix 2 to Subpart P, if applicable, or by calling a vocational expert to testify. 20 C.F.R. §§ 404.1566; 416.966; 416.969. If the Commissioner succeeds in

shouldering her burden at step five, the claimant is not disabled. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV. THE ALJ'S DECISION

At steps one and two, respectively, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, and that she suffered the following severe impairments: right ankle disorder status post right ankle lateral and posterior malleolus fractures requiring two surgeries with degenerative changes; back and hip disorder; obesity; bipolar disorder; panic disorder; and posttraumatic stress disorder. [Doc. 8-3 at 35 (T. at 34)]. At step three, the ALJ concluded that none of Plaintiff's impairments met a Listing.

At step four, the ALJ concluded that:

> The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can perform occasional climbing ramps and stairs, crouching, and stooping, but never climbing ladders, ropes, or scaffolds; she should avoid concentrated exposure to hazards; and she can perform simple, unskilled job tasks with no more than occasional contact with co-workers, supervisors, and the general public.

[Id. at 37 (T. at 36)]. The ALJ identified Plaintiff's past work to include employment as a cashier (unskilled work which required light exertion), a waitress (semi-skilled work which required light to medium exertion), a fast

6

food cashier (unskilled work which required light exertion), and a cook (semi-skilled work which required medium exertion). [Id. at 42 (T. at 41)]. The ALJ then concluded that Plaintiff could not perform past relevant work because her RFC contemplated only sedentary work. [Id.].

With the Plaintiff having carried her burden through the first four steps, the ALJ then assessed whether, at step five, the Commissioner could meet her burden under the Grids to show Plaintiff was not disabled, or show Plaintiff was otherwise qualified for existing employment. Because Plaintiff's RFC did not encompass the *full range* of sedentary work, the ALJ concluded that a Grid Rule 201.21 determination of "not disabled" was unwarranted. [Id. at 43 (T. at 42)]. Based upon the testimony of the vocational expert, however, the ALJ concluded that, considering the Plaintiff's age, education, work experience, and RFC, there were other jobs existing in the national economy such as machine operator, inspector/sorter, and hand picker that she was able to perform. [Id.]. The ALJ therefore concluded that the Plaintiff was "not disabled" as defined by the Social Security Act and denied benefits. [Id.].

## V. DISCUSSION

The parties in this matter have filed cross motions for summary judgment. While not the model of clarity, Plaintiff's argument focuses on the

ALJ's alleged failure to make appropriate findings with regard to her claimed limitations based upon her severe mental health impairments. Without such findings, according to Plaintiff, the ALJ's RFC determination is erroneous and any opinions thereafter rendered by the vocational expert are likewise flawed. Plaintiff asserts, therefore, that the ALJ's ultimate decision denying benefits is infirm. [Doc. 10 at 5 to 15]. The Commissioner, on the other hand, asserts that the Plaintiff's action here is nothing more than an attempt to have the Court impermissibly reweigh the evidence already considered by the ALJ and improperly "second-guess" the ALJ's factual determinations. [Doc. 14 at 14].

Having considered the arguments raised by both parties, the Court concludes that the ALJ failed to apply the correct legal standards at two different steps in the sequential process. Specifically, the ALJ erred at steps 4 and 5 with regard to determining the Plaintiff's RFC. Residual functional capacity is an administrative assessment of "the most" a claimant can still do despite her mental limitations. SSR 96-8p, 61 Fed. Reg. 34,474, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945. In assessing a claimant's RFC, the ALJ must evaluate all of the claimant's medically determinable impairments, including non-severe impairments and symptoms, after considering all of the relevant evidence in the record. 20

C.F.R. §§ 404.1545(a); 416.945. In determining a claimant's RFC, the ALJ must first identify the claimant's functional limitations or restrictions and then assess the claimant's work-related abilities on a *function-by-function basis*. SSR 96-8p (emphasis added). The Ruling explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). … Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this matter, the ALJ failed to conduct a function-by-function analysis of Plaintiff's work-related abilities as those abilities may be impacted by her mental impairments. Having failing to do so, the ALJ's RFC determination is unsupported.

Unlike the Initial Disability Determination and the Reconsideration Disability Determination conducted below where the state agency evaluators explicitly considered Plaintiff's mental RFC such as her ability to: carry out very short and simple instructions; carry out detailed instructions, maintain attention and concentration for extended periods; complete scheduled activities, maintain attendance, and be punctual; sustain an ordinary routine

without supervision; or make simple work-related decisions [Doc. 8-4 at 10-12; 29-30 (T. 73-75; 92-93)], the ALJ addressed none of these. A fair reading of the ALJ's written decision leaves the reader with the firm impression that it is but a template, a preconceived form containing vacant sections, where the ALJ or staff may insert discrete summaries of medical source records, followed by boilerplate conclusory "findings" that purportedly are based upon the record material so inserted. For example, the ALJ's written decision states,

> Due to the claimant's mental impairments, the undersigned finds that the claimant is able to perform simple, unskilled job tasks with no more than occasional contact with co-workers, supervisors, and the general public. The undersigned notes that this conclusion is supported by treatment records and the claimant's reported activities of daily living, as described above.

[Doc. 8-3 at 40 (T. at 39)].

To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). The ALJ did not comply with this mandate of Radford. By failing to conduct a function-by-function analysis, and by failing to address the requisite components of Plaintiff's mental impairments, the ALJ never connected specific record

evidence to the pertinent legal standards when arriving at an RFC determination. See also Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) ("[A]n ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work . . . . [T]he ability to perform simple tasks differs from the ability to stay *on task*.") (internal citations omitted; emphasis added). By way of example, an examining psychologist noted with regard to Plaintiff's thought content that "[s]he has trouble keeping a train of thought." [Doc. 8-19 at 34 (T. at 1051)]. During the hearing before the ALJ, Plaintiff's husband corroborated the psychologist's finding. Mr. Cole testified: "She just -- oh, like if you, if you explained, you know, how something worked to her, how, you know, a process went, she wouldn't be able to tell you it right back, you know. And, and then some days she would and some days she wouldn't. She just -- it's, it's not like a mind loss or anything, it's just she's not able to keep things straight." [Doc. 8-3 at 60-61 (T. at 59-60)]. Significantly, the Plaintiff herself provided the best example of her inability to maintain a train of thought when she testified in response to a simple question posed by the ALJ:

> ALJ: Oh, how much relief do you get when you elevate the foot?

> Plaintiff: Normally when I elevate it, I take my pain medication because I know I'm going to be sitting, you know, for a while and I'm in -- but, oh, I don't know, I forgot, actually, what the question was.
>
> ALJ: I think you answered it fine.

[Doc. 8-3 at 55 (T. at 54)]. This example raises the strong implication that the ALJ failed to consider this evidence at all. Moreover, the ALJ did not complete a function-by-function analysis of the evidence specifically tying pertinent facts to his specific conclusions despite the requirement that the "RFC assessment must be based on *all* of the relevant evidence in the case record[.]" SSR 96-8p (emphasis in original). Most importantly, however, the ALJ never completed a function-by-function analysis of the evidence before arriving at Plaintiff's RFC. As noted very recently by the Fourth Circuit:

> We have explained that expressing the RFC before analyzing the claimant's limitations function by function creates the danger that "the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do."

Monroe v. Colvin, --- F.3d ---, 2016 WL 3349355, at *9 (4th Cir. June 16, 2016) (citing Mascio, 780 F.3d at 636). That is what is seen in this case. In any event, the Commissioner has not complied with the correct legal standards at steps 4 and 5, see Hays, 907 F.2d at 1456, and must be given the opportunity to do so in the first instance.

For all of these reasons, the Court concludes that a remand of this case is necessary.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **GRANTED**, and that the Defendant's Motion for Summary Judgment [Doc. 13] is **DENIED**. Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: July 7, 2016

Martin Reidinger
United States District Judge